**FRAZIER v. UNITED STATES.**

No. 9421.

United States Court of Appeals
District of Columbia.

Argued June 9, 1947.

Decided Oct. 6, 1947.

Mr. M. Edward Buckley, Jr., of Washington, D. C., with whom Mr. Ira Chase Koehne, of Washington, D. C., was on the brief, for appellant.

Mr. John D. Lane, Assistant United States Attorney, of Washington, D. C., with whom Mr. George Morris Fay, United States Attorney, and Mrs. Grace B. Stiles, Assistant United States Attorney, both of

Washington, D. C., were on the brief, for appellee.

Mr. Sidney S. Sachs, Assistant United States Attorney, of Washington, D. C., also entered an appearance for appellee.

Before EDGERTON, CLARK, and PRETTYMAN, Associate Justices.

PER CURIAM.

Appellant was convicted under an indictment which charged that he did "knowingly, wilfully, unlawfully, and feloniously purchase, sell, dispense, and distribute certain narcotic drugs, to wit, nineteen one-half grain synettes [sic] of morphine tartrate and twenty one-half grain codeine sulphate tablets, which said narcotic drugs were not then and there, in or from, the original stamped package." The Internal Revenue Code, U.S.C.A., Title 26, § 2553, made it "unlawful for any person to purchase, sell, dispense, or distribute any of the drugs mentioned * * * except in the original stamped package or from the original stamped package; and the absence of appropriate tax-paid stamps for [1] any of the aforesaid drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession same may be found * * *."

The government did not contend at the trial that appellant sold, dispensed, or distributed any drugs. It contended that he purchased, in the District of Columbia, the morphine tartrate described in the indictment.

Appellant was arrested in the District. He then had in his possession a number of one-half grain syrettes of morphine tartrate. They were not in or from any stamped package. They had been lawfully manufactured for tax-free distribution in the army and were in boxes labelled: "Produced by E. R. Squibb & Sons for U. S. Army Medical Department. Morphine used was property of U. S. Government . . . Control 3D41007." Appellant testified that the boxes were handed to him in Maryland by a soldier whom he did not know, and who asked him to keep them until the soldier came to town. Appellant knew that the boxes contained narcotics, and tried to get rid of them when he was arrested.

Appellant contends there was no evidence that he *purchased* the drugs, or that he acquired them in the District. There was no direct testimony on either point but none was necessary. The statutory "prima facie evidence" clause, quoted above, covers both the fact of purchase and the place of purchase. "The statute here talks of prima facie evidence, but it means only that the burden shall be upon the party found in possession to explain and justify it when accused of the crime that the statute creates." Casey v. United States, 276 U.S. 413, 418, 48 S.Ct. 373, 374, 72 L.Ed. 632. The jury were under no obligation to believe appellant's own interested and improbable testimony,[2] and there was no other testimony that tended substantially to explain and justify his possession of the drug.

Since "stamped package" plainly means a package which has "appropriate tax-paid stamps," it is no defence that the morphine tartrate in appellant's possession had been lawfully manufactured and delivered to the army without stamps and was labelled accordingly. It has been suggested that because the drug had never been in a stamped package, it was not covered by the statutory words "drugs * * * except in the original stamped package or from the original stamped package." This suggestion involves reading into the statute, after the words just quoted, the words "which formerly contained the drugs." It would follow that any narcotics which had, either lawfully or unlawfully, escaped taxation and stamping might be purchased and sold with impunity. The statute has of course no such purpose

---

[1] Changed to "from" by Act of July 1, 1944, 58 Stat. 721, U.S.C.A. Int.Rev. Code, Title 26, § 2553. The date of appellant's alleged offense was April 19, 1944.

[2] Killian v. United States, 58 App.D.C. 255, 29 F.2d 455; Goode v. United States, 80 U.S.App.D.C. 67, 149 F.2d 377; Wong Lung Sing v. United States, 9 Cir., 3 F.2d 780; Acuna v. United States, 5 Cir., 74 F.2d 359.

or effect. "The" stamped package to which it refers is the stamped package in which narcotics must be placed before they can lawfully be sold to the public or purchased by the public.

The prosecutor told the jury that the government was "abandoning" the part of the indictment relating to codeine. But, as he made clear, he meant only that he would not attempt to prove that part. He had only to prove some facts which were charged and were criminal, not all the facts charged in the indictment. His abandonment of the codeine charge is as immaterial as the fact that he made no attempt to prove that appellant did "sell, dispense, and distribute" anything.

Appellant objects to the jury, on the grounds that (1) persons who did not wish to serve had been excused from the panel; (2) all the jurors were government employees; (3) one juror was a messenger in the Office of the Secretary of the Treasury; and (4) one was the husband of a Treasury employee. Willingness to serve does not disqualify a juror. Neither does government employment. United States v. Wood, 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78. In Higgins v. United States, 81 U.S. App.D.C. 371, 160 F.2d 222, a narcotics case, we affirmed a conviction by a jury nine members of which were government employees. No juror in the present case was asked whether he was employed in the Treasury Department, and the fact that one was so employed was not discovered until after the trial. He, like the others, had answered satisfactorily many questions intended to guard against bias. He had no connection with the Department's Bureau of Narcotics, "the particular branch of the Government charged with the administration of the narcotic laws." Appellant's peremptory challenges had not been exhausted when it developed that a prospective juror was married to a Treasury employee. Appellant never specifically challenged this juror, but merely included him in a general challenge of the entire jury. We find no error or abuse of discretion and no evidence that any member of the jury was unqualified or biased.

Appellant's other contentions are likewise without merit.

Affirmed.